IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA M. ESCOBAR, | ) | CASE NO. 1:13-CV-02508 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Jessica M. Escobar ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order

### I.   PROCEDURAL HISTORY

On December 2, 2010, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of June 15, 2005. (Transcript ("Tr.") 146.) The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On March 28, 2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A

vocational expert ("VE") also participated and testified. (*Id.*) On April 13, 2012, the ALJ found Plaintiff not disabled. (Tr. 143.) On September 16, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On November 12, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 18, 19, 20.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinions of state agency reviewing psychologists Drs. Steiger and Warren; and (2) the ALJ erred in evaluating the opinions of Plaintiff's treating psychiatrist Dr. Gomes.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in June 1977 was 27-years-old on the alleged disability onset date. (Tr. 152.) She had a high school education and was able to communicate in English. (Tr. 153.) She had no past relevant work. (*Id.*)

### B. Medical Evidence[1]

#### 1. Medical Reports

On November 21, 2010, local police transported Plaintiff to Mercy Regional Medical Center ("Mercy") for alcohol intoxication and bizarre behavior. (Tr. 475-487.) After drinking

---

[1] Plaintiff expressly notes in her Brief on the Merits that she does not challenge the ALJ's decision with respect to her physical limitations. (Plaintiff's Brief ("Pl.'s Br.") at 10.) Accordingly, the Court will limit its summary of the medical evidence to evidence relating to Plaintiff's mental impairments.

2

an excessive amount of alcohol at a bar, Plaintiff drove her friend home. (Tr. 482.) While doing so, Plaintiff noticed a flat tire and called 911. (*Id.*) Police arrive and arrested her for driving under the influence ("DUI"). (*Id.*) Plaintiff then began to act bizarrely. (*Id.*) At Mercy, Plaintiff reported that she was looking for a job in the area. (*Id.*) She described herself as a former medical school student and hypochondriac. (*Id.*) She stated "that if she is around someone that [complains of] medical problems, she will claim that she has the same medical problems as well." (*Id.*)

Plaintiff was given Ativan and transferred to the Nord Center Crisis Stabilization Unit ("Nord"). (Tr. 485-486.) A clinical counselor and social worker performed a diagnostic assessment. (Tr. 346-355.) Plaintiff described herself as homeless and stated that she could attend to daily activities and household chores. (Tr. 346.) For leisure, she went to clubs and had fun. (Tr. 347.) Regarding current symptoms, Plaintiff reported anxiety and depression but denied anger, aggression, oppositional behaviors, psychosis, mood swings, or deficits in attention and concentration. (Tr. 351.) Plaintiff admitted to acting impulsively, but she did not think that it was a problem. (*Id.*) On examination, Plaintiff displayed a mildly seductive demeanor. (Tr. 354.) She had mildly intense eye contact and spoke clearly. (*Id.*) Her activity level was average. (*Id.*) She denied delusions and hallucinations. (*Id.*) She posed no risk of suicide or violence. (*Id.*) She had a moderately circumstantial and resistant mood but displayed average intelligence. (Tr. 355.) Her insight and judgment were poor. (*Id.*)

The Nord staff commented that Plaintiff "is used to confabulating and nothing she says can be taken at face value." (Tr. 353, 355.) Plaintiff was dramatic, seductive, exaggerative, and childish for her age. (*Id.*) She reported no significant symptoms of

3

depression, anxiety, mood swings, hallucinations, or delusions. (Tr. 353, 355.) It appeared that she had not worked in years. (Tr. 355.) The Nord staff noted that "[d]espite [Plaintiff's] bizarre behavior at the time of her DUI and her apparent response to internal stimulation, this very likely was alcohol induced." (*Id.*) Plaintiff was diagnosed with alcohol-induced psychotic disorder with delusions, alcohol abuse, and historic personality disorder, with a rule-out diagnosis of bipolar I disorder, single manic episode, severe with psychotic features. (Tr. 353.)

On November 23, 2010, Plaintiff underwent a psychiatric evaluation by the Nord staff, which was signed by Dominic Gomes, M.D., on November 26, 2010. (Tr. 643-646.) On examination, Plaintiff displayed a mildly seductive demeanor and had mildly intense eye contact and clear speech. (Tr. 645.) She demonstrated mildly grandiose delusions but denied hallucinations. (*Id.*) Her thought process was moderately circumstantial and she displayed moderately resistant behavior. (Tr. 645-646.) She posed no risk to herself or others. (Tr. 645.) Her mood was euthymic and her affect was full. (*Id.*) Plaintiff had poor insight and judgment but exhibited average intelligence and reported no cognitive impairments. (Tr. 646.) The Nord staff repeated that Plaintiff "is used to confabulating and nothing she says can be taken at face value." (*Id.*)

Dr. Gomes continued to treat Plaintiff for bipolar disorder, with visits approximately monthly from January 2011 to January 2012. (Tr. 396-397, 400-401, 410-411, 424-425, 579-580, 604-605, 817-818, 831-832, 849-850, 363-364.) He prescribed Plaintiff anti-manic agents and mood stabilizers, anti-anxiety medications, and anti-depressants. (Tr. 410, 429, 647, 769-770, 867.)

Plaintiff also treated with Laurie Price, a therapist at Nord. (Tr. 372-375, 389, 637,

639, 641-642, 765, 767.)  Ms. Price assisted Plaintiff with meeting her basic needs, including budgeting food stamps, keeping medical appointments, and obtaining clothing and food.  (Tr. 577, 593, 614.)  Ms. Price also assisted Plaintiff with court hearings for criminal charges in December 2010 and December 2011 and with hearings at Job and Family Services for benefits.  (Tr. 368, 595, 835, 839.)

On December 8, 2010, the Nord staff found that Plaintiff needed no assistance with social/recreational needs or daily activities.  (Tr. 389.)  Despite being homeless and complaining of depression, anxiety, insomnia, and mood instability, Plaintiff saw friends daily, attended AA meetings, read, watched movies, and independently completed daily activities.  (Tr. 389.)  Throughout Plaintiff's treatment at Nord, she had good mood/affect, denied current crisis, was oriented, and behaved/functioned appropriately.  (Tr. 372, 637, 639.)  On some occasions, Plaintiff noted that her mood was agitated.  (Tr. 633.)  Plaintiff reported that her medications helped improve her mood.  (*Id.*)

On December 16, 2010, Dr. Gomes completed a Medical Functional Capacity Assessment wherein he opined that Plaintiff had mental limitations that ranged from not significant to marked.  (Tr. 761-763.)  Specifically, Dr. Gomes opined that Plaintiff had moderate limitations in the following abilities: remembering locations and work-like procedures; carrying out very short and simple instructions; carrying out detailed instructions; and maintaining concentration for extended periods.  (Tr. 761.)  Dr. Gomes further opined that Plaintiff was markedly limited in the ability to: understand and remember very short and simple instructions; understand and remember detailed instructions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number

and length of rest periods. (Tr. 761.)

From December 17, 2010, to December 29, 2010, Plaintiff reported to Nord several more times. (Tr. 360-371.) On December 17, Plaintiff reported that she was close to earning a cosmetology license and wished to pursue it after she stabilized. (Tr. 368.) On December 20, Plaintiff described her main symptoms as anxiety and depression. (Tr. 366.) The following day, she stated that her anxiety was more under control with medication. (Tr. 362.) Plaintiff reported that her medications made her unable to concentrate and caused her to feel "loopy," but stated they had been "very helpful so far." (*Id.*) On December 29, Plaintiff reported that she was adhering to her medications and that they were "working well." (Tr. 360.) She indicated that she felt a lot of anxiety due to being homeless but that her medications helped keep her balanced. (*Id.*)

On December 29, 2010, Ms. Price completed a Daily Activities Questionnaire. (Tr. 379-380.) She stated that Plaintiff got along well with others. (Tr. 379.) Ms. Price opined that Plaintiff's forgetfulness, anxiety, and poor concentration might prevent her from performing work activities. (*Id.*) Ms. Price stated that Plaintiff had good abilities in preparing food, performing household chores, caring for her hygiene, driving/taking public transportation, banking, and paying bills. (Tr. 380.) Ms. Price further noted that Plaintiff read, walked, involved herself in music, and spent time with her family. (*Id.*)

On January 3, 2011, Dr. Gomes completed a Mental Status Questionnaire on Plaintiff's behalf. (Tr. 376-378.) Dr. Gomes opined that Plaintiff had poor to average mental functional abilities. (Tr. 377.) He also asserted that Plaintiff had poor memory and needed directions repeated. (*Id.*) He further stated that Plaintiff had poor concentration and average attention skills. (*Id.*) He noted that Plaintiff experienced panic attacks under

6

high pressure and was anxious around a large number of people. (*Id.*) He noted no deficiencies in adaption. (*Id.*)

On August 15, 2011, Dr. Gomes completed a medical source statement on Plaintiff's behalf. (Tr. 571-572.) Dr. Gomes opined that Plaintiff had extreme limitations in the ability to maintain attention and concentration for two-hour periods of time and in the ability to perform work activities at a reasonable pace. (Tr. 571.) He further opined that Plaintiff had the following marked limitations: the ability to remember, understand, and follow simple directions; keep a regular work schedule and maintain punctual attendance; withstand the stresses and pressures of routine, simple, unskilled work; make judgments that are commensurate with the functions of unskilled work, *i.e.*, make simple work-related decisions. (Tr. 571-572.) Dr. Gomes noted that Plaintiff was moderately limited in the ability to interact appropriately with others. (Tr. 571.) Dr. Gomes opined that Plaintiff's limitations had lasted, or were expected to last, at least 12 months. (Tr. 572.) He noted that Plaintiff's mental limitations were severe enough to prevent her from successfully completing work functions. (*Id.*)

### 2. Agency Reports

On June 2, 2011, state agency reviewing physician Karen Steiger, Ph.D., opined that Plaintiff had mild restriction in activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 76.) Dr. Steiger reported that Plaintiff was moderately limited in the following abilities: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms and

performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. (Tr. 80-82.) Dr. Steiger concluded that Plaintiff could understand and recall simple instructions; carry out simple, routine tasks to completion without strict time pressures; interact in a setting with superficial interactions expected; and adapt to minor changes in a calm setting with few changes. (*Id.*) She further opined that Plaintiff could perform routine, up to four-step tasks in a predictable environment where expectations are clear and consistent, and have brief superficial contact with others, but could not have strict production quotas. (Tr. 82.) On October 4, 2011, Vicki Warren, Ph.D., affirmed Dr. Steiger's opinions. (Tr. 113, 117-118.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff testified that she can no longer work due to a back injury; pain in both legs; and depression. (Tr. 24.) She testified that her main problem was her back. (*Id.*) She stated that her medications made her feel "halfway asleep." (Tr. 25.) Plaintiff treated with Dr. Gomes once per month for depression and bipolar disorder. (Tr. 30.) She stated that her depression made her not want to leave her home and caused her to hear voices, but that "with the medication, it takes that all away." (*Id.*)

Plaintiff watched TV and could follow the programs. (Tr. 32-33.) She could take care of her personal hygiene on her own. (Tr. 34.) She could use the microwave to prepare meals. (Tr. 35.) She could clean, dust, vacuum, and shop. (Tr. 36.) She testified that she had problems dealing with crowds of people. (Tr. 33.) Plaintiff visited with her

children every other weekend. (Tr. 35.) She enjoyed decorating flowers and painting pictures for her kids. (Tr. 36.) She went for walks around her neighborhood. (Tr. 35.) Plaintiff described a typical day as follows:

> Okay, when I get up in the morning, I go and make me coffee, I feed my cat. I go [sic] my backroom and take my medication, and then I'll sit down, and I put a movie on in my DVD player, and I watch "Underworld" and–that's my favorite movie. And then after that, I just stay in my house all day unless I have an appointment with Nord or something.

(*Id.*)

### 2. Vocational Expert's Hearing Testimony

Ted Macy, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work experience. (Tr. 45.) The hypothetical individual would be capable of performing light work with the following additional limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; frequent balancing; and no concentrated exposure to temperature and/or humidity extremes, vibration, environmental pollutants and hazards such as heights, machinery, and commercial driving. (*Id.*) The individual could understand and recall simple instructions and carry out simple, routine tasks without strict time pressures in a low-stress setting with few changes and superficial interpersonal interactions with others. (*Id.*) The VE testified that the individual would be capable of performing such jobs as a wire worker, an electronics worker, and a bench assembler. (Tr. 46.) The VE further testified that there would be no jobs existing in significant numbers in the economy that the hypothetical individual could perform if the individual would be off-task at least 20 percent of

the time. (Tr. 47.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

10

impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since June 15, 2005, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder, histrionic personality disorder, and multiple joint strain.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, while she can frequently balance and can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, she can never climb ladders, ropes, or scaffolds.  Furthermore, she must avoid concentrated exposure to temperature and/or humidity extremes, vibration, environmental pollutants, and hazards, such as heights, machinery, and commercial driving.  Mentally, she can understand and recall simple instructions and carry out simple, routine tasks.  She must work in a low stress environment with few changes, no strict time pressures, and no more than superficial interpersonal interactions with others.

6. The claimant has no past relevant work.

7. The claimant was born on June 28, 1977, and was 27-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Act, from June 15, 2005, through the date of this decision.

(Tr. 148-154.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

      **B.**      **Plaintiff's Assignments of Error**

            **1.**      **The ALJ Erred in Evaluating the Opinions of State Agency Reviewing Psychologists Drs. Steiger and Warren.**

State agency reviewing psychologists Drs. Steiger and Warren opined that Plaintiff is limited to a "calm setting," where "expectations are clear and consistent," and only "brief" superficial contact with others.  (Tr. 82, 118.)  Plaintiff argues that the ALJ erred by giving "great weight" to the aforementioned opinions yet failing to account for those specific restrictions in Plaintiff's residual functional capacity (RFC) or providing reasons for discounting them.  For the following reasons, Plaintiff's argument has merit.

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Here, the ALJ's RFC determination directly conflicts with the opinions of Drs. Steiger and Warren, and the ALJ fails to explain, or even address, these inconsistencies. Dr. Steiger opined that Plaintiff could have "brief superficial contact with others." (Tr. 82.) In his RFC determination, the ALJ limited Plaintiff to work with "no more than superficial interpersonal interactions with others." (Tr. 150.) The ALJ does not explain why he omitted Dr. Steiger's limitation of Plaintiff to *brief* superficial interactions. As Plaintiff explains in her Brief, the term "superficial" refers to the nature of social interactions but does not address the duration of those interactions. At Plaintiff's hearing, the VE testified that he interpreted the term "superficial" to mean "[i]nteractions not requiring any negotiation, not being–not worrying about the, you know, the responsibility for someone else's safety, not having to negotiate or explain extensive changes." (Tr. 53.) When questioned by Plaintiff's attorney, the VE agreed that "superficial" means "no negotiation, arbitration, or confrontation, no responsibility for the health and safety of others, and no supervision of others. . . ." (Tr. 54.) Thus, the VE's testimony, on which the ALJ relied, clearly indicates that the term "superficial" refers to the nature, not duration, or social interaction. Dr. Steiger found that Plaintiff was limited not only in the quality of social interaction in which she may engage, but in quantity as well by limiting Plaintiff to "brief" superficial contact with others. Because the ALJ's RFC does not adequately account for this restriction and the ALJ did not explain his reasons for rejecting this portion of Dr. Steiger's opinion, the ALJ erred.

Furthermore, the ALJ's RFC does not account for Dr. Warren's restriction of Plaintiff to work in a "calm setting" where "expectations are clear and consistent." (Tr. 118.) At Plaintiff's hearing, the VE testified that a person who would need to be in a "calm" work setting would be unable to work, as no work setting is always calm. (Tr. 56.) The VE

14

further testified that he could not provide any jobs that an individual who required clear and consistent expectations could perform, because "consistency and clarity of expectations are subjective," therefore "there's no way a job is going to be able to meet that for every individual. (Tr. 57.)  Thus, Dr. Warren opined that Plaintiff had two limitations that, according to the VE, would preclude her from performing work existing in significant numbers in the national economy.   In determining Plaintiff's RFC, however, the ALJ does not account for those limitations or explain his reasons for rejecting that portion of Dr. Warren's opinion which found such restrictions.  Accordingly, the ALJ erred in his evaluation of Dr. Warren's opinion.  For the foregoing reasons, Plaintiff's first assignment of error presents a basis for remand of her case.

### 2. The ALJ Erred in Evaluating the Opinions of Plaintiff's Treating Psychiatrist.

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Gomes, Plaintiff's treating psychiatrist.   "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record."  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  See *Wilson,* 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.,* 539

F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, Wilson, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  Id.

Here, although the ALJ considered Dr. Gomes a treating source, he did not give Dr. Gomes' opinions regarding Plaintiff's mental capabilities controlling weight. (Tr. 152.)  In rejecting Dr. Gomes' opinions, the ALJ explained:

> [T]he undersigned does not accord evidentiary weight to the opinions of treating provider Dominic Gomes, M.D.  According to him, [Plaintiff] has marked limitations with her abilities to remember, understand, and follow simple directions, keep a regular schedule, interact with others, and make simple work-related decisions, and extreme limitations of her abilities to maintain attention and concentration for two-hour periods and perform activities at a reasonable pace.  Finally, he believes she is unable to work (Exhibits 4F, 5F, 12F, 14F/5-7, 15F), which is a medical opinion on an issue that is reserved for the Commissioner (SSR 96-5p).  This assessment is inconsistent with the objective findings, which include a good mood and affect, coherent speech, appropriate behavior, a normal thought process, average reasoning skills, and average intelligence, as well as the claimant's activities, which include paying bills, handling a checking account, reading, walking, using public transportation, attending meetings, dating, maintaining several friendships, and traveling.  Accordingly, the opinions of Dr. Gomes are rejected.

(Tr. 152.)

The ALJ's rationale for assigning less than controlling weight to Dr. Gomes' opinions satisfies the good reasons requirement of the treating physician rule.  First, the ALJ was correct in noting that Dr. Gomes' opinion that Plaintiff cannot work due to her mental condition is not an opinion of a medical condition, but rather is an opinion of disability that is

16

reserved for the ALJ.  It is well established that certain issues are reserved to the Commissioner for determination.  See 20 C.F.R. § 416.927(d).  Among these are whether a claimant is disabled.  See 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Accordingly, the ALJ did not err in giving less than controlling weight to Dr. Gomes' opinion that Plaintiff is unable to work, as the ALJ was not required to defer to Dr. Gomes' opinion on that subject.

Furthermore, the ALJ did not err in rejecting Dr. Gomes' opinion regarding Plaintiff's functional limitations, because the ALJ reasonably concluded that the opinions were not consistent with other substantial evidence in the record.  (Tr. 152.)  The ALJ discussed the following evidence supporting his conclusion that Dr. Gomes' opinions were not supported by the record:

- The ALJ noted that Plaintiff's daily activities suggest that she does not have more than moderate limitations with her activities of daily living, social functioning, or concentration, persistence, or pace, and she does not live in a highly supportive living arrangement.  (Tr. 149.)  "As evidenced by the record, the claimant cares for her personal needs, prepares simple meals, performs light cleaning, shops, pays bills, handles a checking account, reads, watches television, walks, uses public transportation, attends meetings, dates, maintains several friendships, and travels to Toledo, Ohio to visit her family."  (*Id.*)

- The ALJ observed that "while some psychological examinations revealed a depressed mood, rapid speech, a circumstantial thought process, memory deficit, and poor insight and judgment, others revealed a good mood, coherent speech, appropriate behavior, a normal thought process, average reasoning skills, and average intelligence (Exhibits 3F/13, 14, 18, 20, 22, 4F/1, 6F/23, 27, 13F/63, 14F/5, 90)."  (Tr. 151.)

- The ALJ found that several factors diminished Plaintiff's overall credibility.  (Tr. 151.)  For example, at the hearing, she testified that she

>    never had a DUI, but in November 2010, police cited her for that offense after discovering her driving with a blood alcohol level of .150.  (*Id.*)  Furthermore, one treating provider noted that Plaintiff is used to confabulating and exaggerating and that nothing she said could be taken at face value.  (*Id.*)  The ALJ further indicated that a review of Plaintiff's work history showed that she only worked sporadically prior to her alleged onset date, raising a question of whether he continuing unemployment was actually due to medical impairments.  (*Id.*)
>
> •  State agency reviewing physicians Drs. Steiger and Warren opined that Plaintiff retained the capacity to understand and recall simple instructions, carry out simple, routine tasks without strict time pressures, work in a setting with superficial interactions, and adapt to minor changes in a calm setting with few changes. (Tr. 152.)

Thus, the ALJ adequately explained how substantial evidence in Plaintiff's record did not support Dr. Gomes' extreme opinions regarding Plaintiff's mental limitations.  While Plaintiff has provided evidence to support her argument that Dr. Gomes' opinions are supported, the existence of such evidence alone would not be an appropriate reason to reverse the ALJ's decision:  An ALJ's decision that is supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.  According, Plaintiff's second assignment of error is without merit.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*  
U.S. Magistrate Judge

Date: December 9, 2014